The State *v.* Chicago and Eastern Illinois Railroad Company *et al.*

THE STATE *v.* THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY ET AL.

[No. 17,647.   Filed March 10, 1896.   Rehearing denied May 28, 1896.]

RAILROADS. — *Consolidations of Companies.* — *Filing Articles of Agreement.* — *Fees for Filing.*—*Secretary of State.* — *Condition Precedent.*—Under acts 1891, page 84, sections 1 and 2, providing that the Secretary of State shall charge certain fees for filing and recording an agreement for the consolidation of railroad companies and providing that he shall neither file nor record the articles mentioned unless the fees for filing same be first paid, the payment of the fee is a condition precedent to the receiving of the same for filing by the Secretary of State.

STATE OFFICER.—*Fees for Filing Articles of Agreement.*—*Waiver of Advance Payment.*—Where the statute provides that the fees for filing a document shall be paid in advance, and where such fee does not, under the law, go to the officer with whom the same is required to be filed as his own remuneration, but goes into the public treasury for the benefit of the State, such officer cannot waive the advance payment of such fees.

SAME.—*Filing Articles of Agreement.*—When articles of agreement were received by the Secretary of State for the purpose of filing them under sections 1 and 2 of the acts of 1891, page 84, and payment of the fee for filing same was refused, and such officer declined to file them on account of the refusal to pay the fee, the parties were in the same condition as though the offer to file had not taken place.

From the Marion Circuit Court.   *Affirmed.*

*W. A. Ketcham,* Attorney-General, *Smith & Korbly,* and *L. O. Bailey,* for State.

*A. C. Harris,* for appellees.

JORDAN, J.—This action was instituted by the State to recover of the appellee the sum of $25,000.00, which it claimed accrued to the former under the act of 1891 (Acts of 1891, p. 84), as fees for the filing and recording of appellee's articles of consolidation in the office of the Secretary of State. The complaint avers "That on the 9th day of March, 1881, the Chicago & Eastern Illinois Railroad Company was formed by the consolidation, under the laws of the States of Indiana and Illinois, of certain railways in those States, which company continued in existence; that on the 30th day of April, 1886, another consolidated railroad corporation was formed, under the laws of Indiana and Illinois, under the name of the Chicago & Indiana Coal Railway Company, which company continued in existence; that on June 6, 1894, under the laws of Indiana and Illinois, 'the said Chicago & Eastern Illinois Railroad Company,' as consolidated on the said 9th day of March, 1881, and the said Chicago & Indiana Coal Railway Company, undertook and attempted to consolidate, and did enter into articles of agreement and consolidation, and thereby became 'the Chicago & Eastern Illinois Railroad Company,' the defendants herein—that being the name given the new consolidated corporation in said articles; that by the articles of consolidation, the consolidated company was authorized to issue capital stock to the amount of $25,-000,000.00.  *    *    *    *    *    *

"That pursuant to the resolution of the board of directors of the said consolidated company, and the agreement of said consolidated companies, said consolidated company did, on the 7th day of June, 1894, deliver for filing to the Honorable William R. Myers, the then Secretary of State of the State of Indiana, the articles of consolidation aforesaid, and did then and there, on the said 7th day of June, 1894, request

and demand that said Myers, as such Secretary of State, should cause the same to be filed in the office of the Secretary of State, as by the statute made and provided; and the said William R. Myers, Secretary of State, did then and there, to-wit: June 7, 1894, receive from said consolidated corporation said articles of consolidation for the purpose of being filed, and the said Myers, as such Secretary of State, did then and there notify and inform the officer and agent of said consolidated corporation for presenting said articles of consolidation for filing, that the fee therefor, which by law he was required to collect, amounted to $25,000.00, and did then and there demand of such agent of said consolidated corporation the payment of said fee of $25,000.00, but he, the said agent of the said consolidated company, then and there failed, neglected and refused so to do, and wrongfully and unlawfully took and removed the said articles of consolidation from the said office of the said Secretary of State; and although payment of said fee has been often since demanded from the defendants, and each of them, they have wholly failed, neglected, and refused to pay the same, or any part thereof, and the same is now due and unpaid." *    *    *    *    *    *

The cause was put at issue by an answer in denial, upon the part of the appellee, and upon a trial by the court, without the intervention of a jury, the result was a finding "that the plaintiff take nothing by its suit." Over a motion by appellant for a new trial, wherein, among other reasons, it was assigned that the finding was contrary both to the evidence and the law, judgment was rendered upon the finding.

The action of the court in overruling this motion, is the only error assigned in this appeal. The learned counsel for the appellant propound two questions,

which they contend are presented by the record for the consideration of this court, namely:

"1.    Was the appellee, The Chicago & Eastern Illinois Railroad Company, bound to pay the corporation tax provided for in the act of 1891, notwithstanding the Secretary of State did not formally file the articles of consolidation tendered for filing, and received by him?

"2.    Was the defendant, under the pleadings filed, in a condition to claim that the articles of consolidation were not actually filed, or is it not estopped because of its unsworn answer in general denial from controverting its corporate existence, as alleged in the complaint, and consequently from claiming that it did not file its articles of consolidation in all respects in compliance with the act of 1891?"

The theory of the complaint, which must be determined from its entire scope and purpose, appears to be, that the appellee, as a consolidated railroad company, presented its articles of consolidation to the Secretary of State for the purpose of having the same filed and recorded by said officer in his office. That said consolidated company requested and demanded that its articles should be filed and recorded by said secretary. That the latter received the same from the appellee for the purpose of being filed, and demanded the payment of $25,000.00 as the fee provided by the act of 1891, which appellee refused to pay, and wrongfully and unlawfully took and removed the articles from the office of said secretary, and upon demand still refuses to pay said sum, which is due and unpaid. It has been repeatedly affirmed by this court, that a definite theory of the plaintiff's cause of action must be outlined by his complaint, and this the evidence must sustain and the law support, and if he succeeds at all in obtaining the relief demanded, it must be upon such

theory. The contentions of appellee's learned counsel, in part, are that, under the evidence, the State wholly failed to sustain the allegations of its complaint, and that the judgment of the trial court, for this reason, must be affirmed. They insist that "conceding that the mere presentation of appellee's articles of consolidation, at the office of the Secretary of State, was an 'attempt to organize under Indiana laws,' the record contains ample evidence that the appellee immediately repudiated that attempt. The necessity of filing its articles and paying the fee in order to obtain incorporation, was brought directly to the knowledge of the appellee by the Secretary of State, and the terms of the State's offer were at once rejected. They have never since been accepted."

They further contend that the evidence shows that the "appellee did not leave its articles of consolidation with the officer for action or preservation. It simply showed them to him, and upon learning the amount of the fee, immediately removed them from his office. The officer did not endorse the articles as received into his custody, nor give them a place among other papers, nor file them away."

Assuming that the complaint is sufficient, we may therefore limit our investigation to the cardinal question involved: is the judgment of the trial court a correct result, according to law under the evidence in the cause?

The evidence, which we have carefully read, discloses that about June 7th, 1894, one Chas. E. Heckler, a clerk in the law department of the Chicago & Southern Illinois Railroad Company, in the city of Chicago, and representing this corporation, was sent to Indianapolis, Indiana, for the special purpose of having filed in the office of the Secretary of State of Indiana, the articles of consolidation in question, and also in the

offices of the several county recorders of the counties through which the line of said railroad passed. Heckler gave his evidence by deposition, and in stating his version as to what took place between him and Mr. Ellis, the deputy Secretary of State, in regard to filing the articles in controversy, testified to the following facts:

"I went to the office of the Secretary of State about 10 o'clock on the 11th of June, 1894, and in going in was met by a gentleman who seemed to be connected with the office. I gave him my card and told him I was connected with the law department of the Chicago & Eastern Illinois Railroad Company, that I had with me the articles of consolidation of the Chicago & Indiana Coal Railway Company with the Chicago & Eastern Illinois Company, and that I was there for the purpose of having these articles recorded in that office. The gentleman with whom I had this conversation afterwards gave me his card, which I now have in my possession, which states that he was W. S. Ellis, deputy Secretary of State, and gave his residence as 29 Hall Place. I told him I also had with me copies of the articles of consolidation, and that we wished to have these articles recorded in his office, and in the offices of the county recorders of the several counties as quickly as possible, and to that end it was our desire that he compare the original with one of the copies to satisfy himself that it was a true copy, and then affix his recording certificate to the original copy and allow me to take it away with me at once, and for him to retain the printed copy, to record at his leisure. He said that would be all right, and asked me if I knew what the fees were for recording the articles of incorporation. I told him that I did not know the recording rates in Indiana, that the fees for recording the articles of consolidation in the office of the Secre-

tary of State in Illinois had been about $18.00. Mr.
Ellis picked up the articles of consolidation and
looked at the amount said to be the capital stock of
the consolidated companies, and, after making a com-
putation, said that the fees would be $25,000.00.   *   *
*   *   I told him I was very much surprised, that I had
only been furnished $200.00 with which to have the
articles of consolidation recorded in the office of the
Secretary of State and in the offices of the ten county
recorders of the counties through which the Chicago
& Indiana Coal Railway Company passes, and that I
did not understand why, if there was such a law, I had
not been told about it, and that I was sure the law de-
partment of the Chicago & Eastern Illinois Railroad
Company knew nothing about such law.   Mr. Ellis
told me that several consolidations had been tripped
up on that law, that they had received some very large
fees, and showed me their books, with records of fees
as high as $30,000.00 for one consolidation.   We had
some further conversation about the law which I do
not recall.   I told Mr. Ellis that I would have to con-
sult the general counsel of the Chicago & Eastern Illi-
nois Railroad Company before taking any other steps;
that the existence of the law might change the plans
of the companies in some way, and I was not familiar
with the details of the consolidation, and did not know
what they might wish to do.   Mr. Ellis said to me that
he supposed, at any rate, that I was not prepared to
pay the $25,000.00 that day; and I told him I was not.
He said, 'Of course there can be nothing further done
about the recording.'   I said to him that it would be
unnecessary to make any comparison between the
original and the copies I had at the time, as, of course,
he could not file the articles till the fee was paid.   He
said: 'No, that is right; I cannot file the articles of
consolidation until the fee is paid, and it will, there-

fore, be unnecessary for you to leave them, as they cannot be considered as filed until the fees are paid.' My recollection is that he said, during the conversation, that it was not the custom of the office of the Secretary of State of Indiana to actually record the articles of consolidation, but that the copies were simply filed and indexed. I remember that during our conversation I used the word 'recorded,' and Mr. Ellis used the word 'file,' and it was in that connection that he explained to me it was not their custom to actually record such documents, but simply to file the copy, and index them. That is substantially all that took place. I then took the articles of consolidation and the copy which I had in my hand and left the office. Mr. Ellis expressed no desire to retain either the original or copy, and said to me that it was unnecessary to leave the copy. I had previously stated to him I wanted to take the original away. There was no fuss or wrangle between Mr. Ellis and myself.  *  *  *  *  He said he did not know how we could escape the payment of the fees unless we reduced the capital stock in the consolidated companies. I told him that I did not know whether that was possible or not, and, in fact, I knew very little about the whole transaction, except that I had been instructed to have the articles recorded, as before stated, and had been furnished with $200.00 with which to have the work done."

Mr. Ellis, the deputy Secretary of State referred to by Heckler, testified as a witness in behalf of the appellant, and his evidence in regard to what took place at the office between him and Mr. Heckler is substantially the same. He further testified, that he knew that Heckler was taking the document in question away with him when he left the office of the Secretary of State, and that he made no objections to his

doing so. These two witnesses were the only parties to the transaction relative to the receiving or filing of these articles of consolidation, and there is no substantial conflict between them upon this element of the controversy. An examination of this testimony demonstrates the fact that it entirely fails, under the law, to sustain the averments of appellant's complaint, to the effect that these articles were received by the Secretary of State for the purpose of being filed in his office. It is clearly shown, we think, that when appellee's agent was informed by the State's officer as to the amount of the fee required to be first paid in order to authorize the filing in his office of the document in controversy, and further informed that he could not file it until the same was paid, that this terminated the matter, and the paper was taken away by the agent with the full consent of the deputy Secretary of State.

In order to constitute a filing of the articles of consolidation it was essential, not only that they should have been left with the secretary at his office, but they should have been received and retained by that officer as papers on file. This principle is supported by the following authorities. *Engleman* v. *State*, 2 Ind. 91 ; *Lamson* v. *Falls*, 6 Ind. 309 ; *Miller* v. *O'Reilly*, 84 Ind. 168 ; *Powers* v. *State*, 87 Ind. 144 ; *Peterson* v. *Taylor*, 15 Ga. 483 ; 7 Am. and Eng. Ency. of Law, 960; *Gorham* v. *Summers*, 25 Minn. 81 ; *Goldsby* v. *Beene's Admr.*, 38 Ala. 248.

In *Powers* v. *State, supra,* this court said: " A paper is filed when delivered to a proper officer, and by him received to be kept on file." The first section of the act of 1891, *supra,* whereby the filing fee is authorized, provides that the Secretary of State shall charge and collect, for the benefit of the State, the following fees, etc. The second section provides as follows:

"And such Secretary of State shall neither file nor record any of the articles of incorporation, certificates, duplicates, or other papers hereinbefore mentioned, unless all the fees for filing same are first duly paid."

We think that it is evident, from the above clause, that the legislature intended to make the required filing fee, for the articles and papers mentioned in the statute, a condition precedent to the receiving of the same for filing by the Secretary of State. Under the law, therefore, he would not be authorized to receive and file the papers or instruments mentioned, until this condition of payment of the fee in advance had been fully complied with by the person desiring to file the same in his office. The rule may be asserted, that where the statute provides that the filing fee shall be paid in advance of the filing of the document; and where the money therefor, does not, under the law, go to the officer with whom the same is required to be filed, as his own remuneration, but goes into the public treasury for the benefit of the State, as it does in accordance with the requirements of the statute in question, the officer must be considered, at least, in discharge of the duty enjoined upon him to collect the fee in advance for the services rendered by the State through him, as the agent of the latter, and as such he is not authorized to file the papers or articles presented and required to be filed, although they may be left at his office or in his custody for such purpose, until the fee is first paid; and, in consideration of law, they cannot be held or deemed to be filed, until there is a compliance with this requisite condition.

Under such circumstances, the law is the letter of the officer's agency, and he has no warrant to waive the advance payment of the fee. So it must be apparent, we think, that in the case at bar, assuming that the deputy Secretary of State did receive the

articles in controversy for the purpose of filing them, that when the appellee declined to pay the fee, the officer only obeyed the strict command of the statute when he declined to file them. He, having properly refused to file the document in question, under the circumstances, had no further control over it, and it was rightfully removed by the agent of appellee. The refusal of the latter to pay the legal fee demanded, prevented the filing of the document, and left the appellee in the same condition as though the transaction, or offer to file, had not taken place. Accepting, and viewing the evidence in a most favorable light to the appellant, it is apparent, we think, that the latter is not entitled to the relief demanded in this action, and that the judgment of the trial court accords with both the evidence and the law. Therefore, having reached this conclusion, the question as to whether appellee was required to file its articles of consolidation with the Secretary of State by reason of the act of March 9, 1891 (Acts 1891, 392), as it existed prior to the amendment by the act of March 11, 1895 (Acts 1895, p. 255), does not require our consideration.

The question as to the status of the legal entity of appellee, whether it is a corporation *de jure* or one *de facto*, and other propositions so ably argued by counsel for the State, under the evidence, can exert no controlling influence over the result reached in the court below; and hence their consideration is not essential in this appeal.

Judgment affirmed.