RAILWAY STEEL SPRINGS CO. v. CHICAGO & E. I. R. CO.

(District Court, N. D. Illinois, E. D.   June 21, 1917.)

No. 57.

1. RAILROADS ⟨⟫142—CONSOLIDATION—CONSTRUCTION OF AGREEMENT—MORT-
    GAGES.
    Two railroad corporations, of Illinois and Indiana, respectively, con-
    solidated. Each had a first mortgage on its property, that of the Indiana
    company being wholly in that state, and each mortgage provided for sub-
    sequent issues of bonds thereunder for the purpose of making extensions
    or acquiring additional lines, and contained an after-acquired property
    clause. The articles of consolidation recited such mortgages and pro-
    vided that they "shall have the force and effect of first mortgages ex-
    ecuted by this consolidated company and shall equally secure the payment
    of all bonds which have been issued under either of said mortgages
    * * * as well as all bonds which may be hereafter issued by this con-
    solidated company pursuant to and in accordance with the provisions of"
    the Illinois company mortgage which expressly permitted such issue in
    case of consolidation. It further provided that no bonds should be
    thereafter issued under the Indiana company mortgage. Other lines
    were afterward acquired or built, and bonds were issued therefor under
    the Illinois company mortgage, but none were thereafter issued under the
    Indiana company mortgage, and it was never recorded in Illinois. Held
    that, especially in view of their practical construction by the parties for
    many years, the provisions of the consolidation agreement did not have
    the effect of extending the lien of the mortgage of the Indiana com-
    pany over the property of the Illinois company nor over the subsequently
    acquired lines of the consolidated company, nor was such lien so extended
    under the after-acquired property clause of the Indiana company mort-
    gage.

2. RAILROADS ⟨⟫167—MORTGAGES—AFTER-ACQUIRED PROPERTY CLAUSE.
    The after-acquired property clause in a railroad mortgage can only
    be applied to property subsequently acquired by the mortgagor under its
    charter powers, and does not extend to property acquired in another state
    by a consolidated company of which the mortgagor becomes a constituent.

3. RAILROADS ⟨⟫141—CONSOLIDATION—LEGALITY.
    A consolidation of railroad companies, which has been in effect for
    20 years unchallenged by the authorities of the states concerned, will not
    be held invalid as against the laws of such states in a suit between pri-
    vate parties.

In Equity. Suits by the Railway Steel Springs Company, by the
Central Trust Company of New York, by the Metropolitan Trust
Company of the City of New York, and by the Bankers' Trust Com-
pany of New York, against the Chicago & Eastern Illinois Railroad
Company. Causes consolidated. On exceptions of the Metropolitan
Trust Company to the master's report. Exceptions overruled.

This is a consolidated case, and the present issue arose on the claim made
by the Metropolitan Trust Company of the City of New York, trustee in a
mortgage executed by the Chicago & Indiana Coal Railway Company,
December 1, 1885, that by the terms of the consolidation agreement entered
into between the Chicago & Indiana Coal Railway Company and the Chicago
& Eastern Illinois Railroad Company, on June 6, 1894, the lien of its mortgage
was extended over the property of the Chicago & Eastern Illinois Railroad

---

⟨⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company and also over the property subsequently acquired by the company as afterward consolidated.

The Chicago & Indiana Coal Railway Company was a road completed between Fair Oaks, Ind., and Brazil, Ind., in the year 1886.

Mr. H. H. Porter, who owned the controlling interest in the Brazil Block Coal Company, a company owning most of the mines in the Brazil coal fields, Ind., acquired by foreclosure sale the property of the Chicago & Great Southern Railway Company, extending from Fair Oaks, Ind., on the Louisville, New Albany & Chicago Railway (known as the Monon) to Yeddo, in the same state, a distance of 76 miles. Mr. Porter organized the Indiana Railway to take title to the property. At the same time he organized the Lake Michigan & Ohio Railway Company for the purpose of constructing a road south from Yeddo to the Ohio river, passing through Brazil. The name of this latter company was changed to Chicago & Indiana Coal Railway Company in October, 1885. On December 1, 1885, the Chicago & Indiana Coal Railway Company executed its mortgage to the Metropolitan Trust Company of the City of New York and R. B. F. Pierce, trustee, to secure an issue of bonds, the total amount of which was unlimited. Under this mortgage, bonds to the amount of $1,000,000 were issued on account of the construction of the line from Yeddo to Brazil, and it was provided that additional bonds to the extent of $18,000 might be issued for each mile of single-track railroad thereafter acquired by construction, purchase, or consolidation, and a further additional amount of $7,000 per mile of railway constructed or acquired for the purchase of equipment, and $8,000 per mile for double track.

Under date of April 4, 1886, the Chicago & Indiana Coal Railway Company and the Indiana Railway Company were consolidated under the name of the Chicago & Indiana Coal Railway Company, with a capital stock of $10,000,000. The Chicago & Indiana Coal Railway Company thereafter extended its lines in a northeasterly direction from Fair Oaks, to La Crosse, a distance of 27 miles, completing the work in January, 1887. The trains of the Chicago & Indiana Coal Railway Company were intended to use, and for a year or more did use, the Monon tracks from Fair Oaks to Chicago.

For many years previous to this time the Chicago & Eastern Illinois Railroad Company, a corporation formed by the consolidation of Illinois and Indiana corporations, was operating a railroad from Chicago south through Danville to Terre Haute, and by means of a branch had been enjoying the monopoly of transportation of the coal from the Brazil coal fields. Soon after the completion of the Chicago & Indiana Coal Railway Company, fierce competition arose between the two roads over the Brazil coal business. As a result thereof, Mr. Porter bought the controlling interest in the Chicago & Eastern Illinois Railroad Company. This purchase was made about the middle of the year 1887.

On November 1, 1887, the Chicago & Eastern Illinois Railroad Company executed its general consolidated and first mortgage to the Central Trust Company of New York, as trustee, to secure an issue of bonds, the total amount of which was unlimited. Of these bonds $8,000,000 in amount were set apart to be used for retiring prior bonds, and the mortgage provided that additional bonds might be issued to the extent of $18,000 per mile of additional single-track extensions and branches thereafter acquired by the railroad company by construction, purchase, or consolidation, $7,000 per mile for every mile of railroad, including branches and extensions for additional equipment, and an additional amount of $8,000 per mile for every mile of double track (not meaning side tracks) thereafter acquired by the railroad company. The mortgages executed by the coal road and the Eastern Illinois contained in general the same provisions, with the exception that the Eastern Illinois mortgage contained the following provision not found in the Chicago & Indiana Coal mortgage:

"If the railroad company shall hereafter consolidate its property and franchises, by sale or otherwise, with the property and franchises of any other railroad company or companies, the several parties to such consolidation may, by apt words expressed in the agreement, give to this indenture the force and effect of a mortgage conveying to the trustee, above named as its

successor, all of the railroads and appurtenant property of the several par-ties, at the date of such agreement, and all railroads and appurtenant prop-erty which may·be thereafter acquired, by construction or otherwise, by such consolidated company, to secure upon terms of equality the bonds which may have then been issued hereunder by the railroad company, as well as all bonds which may be thereafter issued by such consolidated company, in sub-stantial compliance with the provisions hereof. In case such agreement shall be made, bonds issued by such consolidated company shall be substantially in the forms above set forth, but in the name of the consolidated company, and shall be executed under its corporate seal and attested by the signatures of its president and secretary. It is the intent of this provision to invest such consolidated company with power to issue bonds for the purposes expressed, and subject to the conditions named in this mortgage or deed of trust, to the same extent as they could be issued by the railroad company if no such consolidation had been made, thereby giving to the holders of all bonds issued hereunder, whether by the railroad company or its successors, equality of security."

During the summer of 1887, the Eastern Illinois had caused to be incor-porated two other railroad companies, namely, the Strawn & Indiana State Line Railroad Company and the Chicago, Danville & St. Louis Railroad Com-pany, for the purpose of constructing a branch to and an extension of the Eastern Illinois line. The roads were constructed with the funds of the Eastern Illinois, and under its supervision and by its employés. No stock was ever issued in these roads, and the same were finished and in operation by the Chicago & Eastern Illinois Railroad Company prior to November 1, 1887. The stockholders' meeting of November 1, 1887, which authorized the mort-gage to the Central Trust Company, also ratified a consolidation agreement between the Chicago & Eastern Illinois Railroad Company and the two latter named roads under the name of the Chicago & Eastern Illinois Railroad Com-pany. On November 12, 1887, the agreement was formally executed by the officials of the several companies. The latter consolidation agreement con-tained (article 7) the following provisions:

"Article VII. The mortgage or deed of trust made and entered into on the first day of November, in the year A. D. 1887, by and between the Chicago & Eastern Illinois Railroad Company, party of the first part hereto and the Central Trust Company of New York, a corporation created by and existing under the laws of the state of New York, trustee, shall have the force and effect of a first mortgage executed by the consolidated company, and shall equally secure the payment of all bonds which have been issued under it by the Chicago & Eastern Illinois Railroad Company, as well as pursuant to, and in accordance with its provisions by the consolidated company; but nothing in this article contained shall be construed in such manner as to limit or restrict the powers of said consolidated company to execute other mortgages or deeds of trust, conveying its property, or any part thereof, to secure the principal or interest of any other debt or debts which it may create."

On December 1, 1887, the Eastern Illinois and the Coal road entered into a traffic agreement whereby the traffic of both roads was controlled by a joint committee appointed by the directors of each company. In 1888, the consoli-dation agreement of November 12, 1887, was amended by a vote of the stock-holders of the Chicago & Eastern Illinois Railroad Company to provide that the stock of the Eastern Illinois might be issued to be exchanged for the stock of any other railroad whose tracks connected with the Eastern Illinois.

In pursuance of this power, in March, 1889, the Eastern Illinois acquired the entire amount of outstanding preferred and common stock of the Coal road by exchange of its own stock therefor, share for share, and on May 1st took over the operation of the Coal road and closed all its books of account and took charge of its receipts and disbursements. The corporate organiza-tion of the Coal road was kept up by annual stockholders' meetings and by the election of directors to whom were issued qualifying shares.

Under date of June 1, 1892, the Chicago & Indiana Coal Railway Company executed a lease of all its property to the Chicago & Eastern Illinois Railroad

Company for 999 years. The Eastern Illinois Company agreed to pay, in lieu of rental, all taxes and assessments on the leased property and the principal and interest of all of the outstanding bonds secured by the mortgage to the Metropolitan Trust Company. Under date of June 6, 1894, the Eastern Illinois Company and the Coal Railway Company entered into articles of consolidation, the name of the consolidated company being the Chicago & Eastern Illinois Railroad Company. The consolidation agreement contained the following provisions:

"Article VII. The mortgage or deed of trust made and entered into on the 1st day of November, in the year A. D. 1887, by and between the Chicago & Eastern Illinois Railroad Company and the Central Trust Company of New York, a corporation created by and existing under the laws of the state of New York, trustee, also the mortgage or deed of trust made and entered into on the 1st day of December, in the year A. D. 1885, by and between the Chicago & Indiana Coal Railway Company and the Metropolitan Trust Company of the City of New York, a corporation created and existing under the laws of the state of New York, and R. B. F. Pierce, of Crawfordsville, in the state of Indiana, trustees, shall have the force and effect of first mortgages executed by this consolidated company, and shall equally secure the payment of all bonds which have been issued under either of said mortgages or deeds of trust by the Chicago & Eastern Illinois Railroad Company or the Chicago & Indiana Coal Railway Company, as well as all bonds which may be hereafter issued by this consolidated company, pursuant to and in accordance with the provisions of said mortgage or deed of trust made and entered into on the 1st day of November, in the year A. D. 1887, by and between the Chicago & Eastern Illinois Railroad Company and said Central Trust Company of New York, trustee.

"No bonds shall be hereafter issued under or pursuant to said mortgage or deed of trust made and entered into on the 1st day of December, in the year A. D. 1885, by and between the Chicago & Indiana Coal Railway Company and said Metropolitan Trust Company of the City of New York and said R. B. F. Pierce, trustees; but nothing in this article contained shall be construed in such manner as to limit or restrict the powers of this consolidated company to execute other mortgages or deeds of trust conveying its property, or any part thereof, to secure the principal or interest of any other debt or debts which it may create."

No consideration was paid to the Chicago & Eastern Illinois Railroad Company for the execution of the above article 7 either by the Metropolitan Trust Company or any one else.

The total amount of bonds issued by the Chicago & Eastern Illinois Railroad Company under its mortgage to the Central Trust Company was $21,-343,000, of which $13,950,000 were issued subsequent to June 6, 1894. From the proceeds of these bonds issued for construction after June 6, 1894, the railroad from Chicago to Terre Haute was double-tracked, a line to St. Louis was acquired and also a line in Illinois to the Ohio river was purchased, and numerous feeder lines built.

In 1905, the Chicago & Eastern Illinois Railroad Company executed its mortgage to the Bankers' Trust Company of New York, under which about $18,000,000 of bonds were issued and are now outstanding. The claim of the Metropolitan Trust Company was that by virtue of article 7 of the consolidation agreement of June 6, 1894, its mortgage became a valid and subsisting lien on all the property of the Chicago & Eastern Illinois Railroad Company, as follows:

"(1) As to all property, rights and interests acquired by or through said constituent Indiana Company a first charge and lien prior and superior in law and in equity, to any other charges or liens whatsoever.

"(2) As to all property, rights and interests acquired by or through said constituent Chicago Company a charge and lien prior and superior to any other charges or liens whatsoever created thereon or attaching thereto subsequently to the date of said articles of consolidation, to wit, June 6, 1894.

"(3) As to all property, rights and interests other than such as are comprised in subdivisions (1) and (2) of this paragraph XVII, a first charge and

lien, prior and superior to any other charges or liens whatsoever, except to the extent. if any, that said mortgage of the Illinois Company, dated November 1, 1887, may be determined to be a valid and subsisting first lien thereon, and to this extent a first charge and lien jointly with the lien of said Illinois Company mortgage, said lien being in all respects joint and equal and without preference or priority of any kind in favor of the lien of said Illinois Company mortgage as against the lien of said mortgage of Chicago & Indiana Coal Railway Company."

Other facts necessary to an understanding of the question will be found in the opinion.

Holt, Cutting & Sidley and Charles S. Holt, all of Chicago, Ill., for Equitable Trust Co. of New York.

Arthur H. Van Brunt, of New York City, and William W. Gurley, Howard M. Carter, and Charles S. Babcock, all of Chicago, Ill., for Central Trust Co. of New York.

Sullivan & Cromwell, of New York City, Royall Victor, of New York City, and Brode B. Davis, of Chicago, Ill., Scott, Bancroft, Martin & Stephens, of Chicago, Ill., and Frank H. Scott, of Chicago, Ill., for Metropolitan Trust Co. of New York.

White & Case, Roberts Walker, and Henry B. Stimson, all of New York City, and Adams, Follansbee, Hawley & Shorey, Samuel Adams, and Mitchell D. Follansbee, all of Chicago, Ill., for Bankers' Trust Co.

Homer T. Dick, of Chicago, Ill., for Chicago & E. I. R. Co.

Will H. Lyford, of Chicago, Ill., for Receiver.

Spooner & Cotton, Charles P. Spooner, and Joseph P. Cotton, all of New York City, for Reorganization Committee.

Burry, Johnstone & Peters and William Burry, all of Chicago, Ill., for Farmers' Loan & Trust Co.

Levinson, Becker, Cleveland & Schwartz, Solmon O. Levinson, and Jerome N. Frank, all of Chicago, Ill., for stockholders' committee.

John S. Miller, of Chicago, Ill., amicus curiæ.

CARPENTER, District Judge (after stating the facts as above). [1] The question before the court is: Did the Chicago & Indiana Coal Railway mortgage of December 1, 1885, become a lien on railways and other properties in Illinois by virtue of the consolidation agreement of June 6, 1894?

Counsel for the Metropolitan Trust Company contend:

First. That article 7 of the consolidation agreement of June 6, 1894, is to be construed as giving to the Coal Railway mortgage a lien upon the then existing Chicago & Eastern Illinois property, subject to that of the Chicago & Eastern Illinois mortgage to the Central Trust Company of November 1, 1887; and a lien equal to and sharing with the lien of that Chicago & Eastern Illinois mortgage upon the property acquired by the consolidated company after June 6, 1894. Counsel point out that the salient provisions of article 7 here are in the same language as is found in the earlier Chicago & Eastern Illinois consolidated agreement of November 12, 1887, which was inserted in order to comply with the provisions in the Chicago & Eastern Illinois mortgage of November 1, 1887, for the issue of bonds for the consolidated com-

pany of 1887; and that in the consolidation of 1894 the language of the previous consolidated agreement was repeated in order to protect the security of the Coal Railway bonds and to provide for the issue of bonds under the Chicago & Eastern Illinois mortgage by the consolidated company.

Second. That the provision in article 7 that the two mortgages should have the force and effect of first mortgages executed by the consolidated company means the same with respect to one mortgage as the other. If the Central Trust mortgage became the mortgage of the consolidated company by virtue of this provision, so, also, the Coal Railway mortgage became the mortgage of the consolidated company. The provision means the same as if the two mortgages were re-executed by the consolidated company. The covenants and provisions of the Coal Railway mortgage, including the after-acquired clauses, became the covenants and provisions of the consolidated company, and applied to its after-acquired property. It was within the intention of the parties to the Coal Railway mortgage, at the time it was made, that the Coal Railway might be extended into Illinois and to Chicago. If they had in mind a particular line, that is not important; and, when afterwards the Coal Railway Company acquired property which brought its line into direct communication with Chicago, that line into Chicago was, upon the consolidation, after-acquired property within the intent of the after-acquired clause in the Coal Railway mortgage. So also as to the extensions and additions by the consolidated company through Illinois. That upon a consolidation the mortgage of a constituent does not cover property afterwards acquired by the consolidated company unless there comes in, in legal effect, a new mortgagor by the consolidation. The Central Trust Company mortgage became a lien upon the lines acquired by the consolidated company from Danville to Brazil, and from Sidell to Tuscola, and from Tuscola to Thebes and to East St. Louis only by the terms of article 7 of the consolidation agreement, by which the Coal Railway mortgage also became a lien upon that property. That the Central Trust Company mortgage became a lien upon the property acquired after the consolidation by virtue of the after-acquired property clause in its mortgage and the consolidation agreement. But that the after-acquired property clause of the Metropolitan Trust Company mortgage is almost identical in terms, and also came into operation under the same provision as that of the Central Trust Company. As the bonds issued under the Chicago & Eastern Illinois mortgage after the consolidation, as contemplated by article 7, were to be secured by the after-acquired property of the consolidated company as well as by the existing property, so the bonds already issued under the mortgage must be so secured, and a fortiori the bonds issued under the Coal Railway mortgage must also be so secured; otherwise the two mortgages, which are to have the effect of first mortgages executed by the consolidated company, would not "equally secure the payment of all bonds which have been issued under either of said mortgages."

Such, briefly, are the contentions of counsel for the Metropolitan Trust Company.

The articles of consolidation of 1894 provided that, thereafter, bonds should continue to be issued under the Eastern Illinois general consolidated mortgage, and that mortgage was the only recourse which the consolidated company then had for raising necessary additional capital. That mortgage contained the following provisions:

"Whenever any additional mile or miles of single-track railroad shall be acquired or created by the railroad company by purchase, construction, consolidation or otherwise, and such fact shall be made to appear to said trust company, by the affidavits of the president or a vice president, and the chief engineer of the railroad company, showing among other things, the exact length of the railroad or railroads so acquired or created, and where the same begin and end; and upon the recording of said mortgage or deed of trust, as required by the laws of the state or states in which any of said additional railroad shall be situate, said trust company shall, upon the request of the board of directors of the executive committee of the railroad company, certify and deliver to the railroad company a further issue of bonds hereunder at the rate of, but in no event exceeding, the amount of eighteen thousand dollars per mile of single-track railroad so acquired or created.

"Provided that, if any railroad acquired by purchase, consolidation or otherwise, shall be incumbered by any mortgage which remains unsatisfied, bonds secured by this mortgage (the general consolidated and first mortgage) shall be issued thereon only for the difference between said incumbrance and the amount for which bonds might be issued hereunder if such incumbrance did not exist."

Commencing with the consolidation of 1894, and continuing until the appointment of the receivers, the Eastern Illinois, first, under the domination of Mr. H. H. Porter, and later under the domination of the "Frisco" System, more than a dozen times issued general consolidated bonds at the rate of $18,000 a mile, for additional railroad acquired by the Eastern Illinois, and no deduction from that amount per mile was made by reason of any existing mortgage on the newly-acquired property.

The record contains the affidavits and certificates furnished by the officers and directors of the Eastern Illinois, on which these additional general consolidated bonds were issued, and in each case of new construction or purchase no deduction was made for any existing lien created by the Coal Railway mortgage. In the case of the acquisition of the line from Danville to Terre Haute and Brazil a deduction was made for the amount of the prior mortgages which had been made by the former owners of those properties, but no deduction was made on account of the Indiana Coal Mortgage.

If the Metropolitan Trust Company contention is to be adopted, and the parties intended that, by the consolidation of 1894, the lien of the Coal mortgage was to be extended over all property thereafter acquired by the Eastern Illinois Company, not a single one of these general consolidated bonds could have been lawfully issued; as, in each case, the amount of the Indiana Coal mortgage lien was far in excess of $18,000 per mile of new railroad for which general consolidation bonds were issued and certified.

The practical construction thus placed upon the articles of consolidation of 1894 must be seriously considered, and all parties interested seemed to believe that the Indiana Coal mortgage was to be regarded

a first mortgage upon the Indiana Coal Railway as it then existed, and the Eastern Illinois mortgage was to be regarded a first mortgage upon the Eastern Illinois Railroad as it then existed, and upon any acquisitions thereafter made by the consolidated company.

When Mr. Porter acquired the Eastern Illinois stock, the Eastern Illinois Company was a successful railroad, and its general credit was a sufficient guaranty of the payment of the principal and interest of the Indiana Coal bonds.

The record shows that in 1902 Mr. Porter and his associates sold to the Frisco Company all of the common stock of the Eastern Illinois (including that which had been exchanged for the Indiana Coal Railway stock) at 250 for the common and 150 for the preferred. Dividends at the rate of 10 per cent. per annum were paid upon the common stock up to the date of the receivership; and dividends of 6 per cent. upon the preferred stock were paid from the time it was created in 1887 until the receivership.

When the refunding mortgage of 1905 was made, it included the first offer that was ever made to give the Indiana Coal bondholders a lien upon the Eastern Illinois Railroad. That mortgage provided that $4,626,000 of refunding bonds should be reserved, to be exchanged, par for par, for the Indiana Coal bonds.

Article 7 of the consolidation agreement of 1894 will not admit of the construction urged by counsel for the Metropolitan Trust Company. It affords no basis for contending that the Coal Railway mortgage was made a second mortgage upon the Chicago & Eastern Illinois lines, or was given a lien equal with that of the Central Trust Company upon after-acquired property of the consolidated company. It is admitted that each of the mortgages remains a first mortgage upon the property covered by it prior to the consolidation. Of course, this could not be otherwise. But the contention that one mortgage became a lien second to the other mortgage upon lines upon which the other was first has no support in article 7. The provision that these mortgages were to have the force and effect of first mortgages of the consolidated company does not mean that the Coal Railway mortgage should be a second mortgage upon the Chicago & Eastern Illinois property, or that the Central Trust Company's mortgage should be a second mortgage upon the Coal Railway. So, also, counsel eliminate "equally" in article 7. They say that the bonds are not equally secured, because the Eastern Illinois bonds are conceded a prior lien upon the Chicago & Eastern Illinois property in existence at the time of the consolidation, but they claim the Coal Railway mortgage was a second lien thereon; so, also, they claim a first lien upon the Coal Railway line of its bonds and give to the Eastern Illinois only a second lien. It cannot be that the words "shall equally secure" mean "shall unequally secure," when the security given to the Coal Railway bonds is compared with the security given to the Chicago & Eastern Illinois bonds.

The adoption in article 7 of the consolidation agreement of 1894 of the language in article 7 of the consolidation agreement of November 12, 1887, which counsel for the Metropolitan contend is important as

showing the meaning of article 7 of the agreement of 1904, shows that the words "shall equally secure" do not refer to a comparison of the bonds of one mortgage with those of the other mortgage, but only the bonds under one mortgage with the other bonds under the same mortgage, because in the 1887 agreement but one mortgage was mentioned. The apparent principal reason for the insertion of these words was to provide that all the bonds under the Chicago & Eastern Illinois Railway mortgage—both those issued prior and those issued subsequent to the consolidation agreement of 1894—should be equally secured, as the explicit terms of the Chicago & Eastern Illinois mortgage of November 1, 1887, require. That was the occasion for the insertion of this provision, and that gives to these words the same meaning and application as they had in the consolidation agreement of 1887. The provision in the Chicago & Eastern Illinois Railway mortgage, to which counsel on each side refer, which authorizes the consolidated company, in case of an agreement for consolidation, to issue bonds under that mortgage, expressly declares that all the bonds so issued shall be equally and in all respects secured by that mortgage, without preference, priority, or discrimination on account of, and without reference to, the time or times of the actual issue of the said bonds or any of them; and that it is the intent of that provision, investing the consolidated company with power to issue bonds under that mortgage, to give to the holders of all bonds issued under it, whether by the mortgagor railroad company or its successors, equality of security. What the parties had in mind in article 7 of the consolidation agreement of 1894 was these provisions of the Central Trust Company mortgage. Realizing this, article 7 plainly means that each mortgage shall equally secure all the bonds issued under it, and, with respect to the Central Trust Company mortgage, that this equality should apply as between bonds issued by the constituent Eastern Illinois before consolidation and those issued by the consolidated company under that mortgage.

The bondholders under the Central Trust mortgage had the contract right to the security of the property covered thereby, undiluted and unimpaired by the claims of the bondholders under the Coal Railway mortgage. This is conceded by counsel as to the property of the Chicago & Eastern Illinois at the time of the consolidation. But it is equally true under the terms of their mortgage as to property coming under this mortgage after the consolidation. It must be noted that, while the mortgage above referred to authorizes the extension of the lien under that mortgage over the property of a constituent in case of consolidation, it did not permit or contemplate the extension over the lines covered by it of the lien of a mortgage upon a constituent company. The Central Trust Company mortgage provided for further issues of bonds for the acquisition of additional lines in the amounts and upon the terms therein stated, and for the issue of such bonds for such purposes by the consolidated company, if an agreement for consolidation should be made. By such provisions the bonds so issued were to be secured by this mortgage upon newly-acquired lines, and all the bonds were to be equally secured. So that, beyond ques-

tion, the Central Trust mortgage by its terms extended to lines so acquired by the consolidated company. This right of the bondholders under that mortgage was a contract right which could be no more impaired by the parties to the consolidation agreement of 1894 than could the lien of those bondholders upon the then existing property of the Chicago & Eastern Illinois Company. In the case of the Central Trust mortgage, the consolidated company becomes the mortgagor in legal effect by the terms of the mortgage itself; and article 7 of the consolidation agreement is to be given such effect as the terms of the mortgage permits, and none other.

[2] Judge Woods held, in the case of New York Security Co. v. Louisville, E. & St. L. Consol. Ry. Co. (C. C.) 102 Fed. 382–398, that the after-acquired property clause in railway mortgages can rightly be construed to extend only to property subsequently acquired by the mortgagor.

The after-acquired property clause of the Coal Railway mortgage embraces only such extensions or additions as might properly be acquired under the charter of the Coal Railway Company, as was held by Judge Taft in the case of Compton v. Jesup, 68 Fed. 263–286, 15 C. C. A. 397, which was cited by counsel for the Metropolitan Trust Company. It was limited by its terms to property acquired by the mortgagor. There was no provision in the Coal Railway mortgage for the purchase of property to become subject to the mortgage by the issue of bonds after the consolidation, as was the case with the Central Trust mortgage. Moreover, the extent of an after-acquired clause is limited to the property acquired for the extension of the line of the mortgagor within the contemplated scope intended by the mortgagor, or appurtenant to the existing lines. The purpose of extending, contemplated by this mortgagor, was from its junction with the New Albany Road at or near Fair Oaks to a point at or near Chicago, and to some point on the east shore of Lake Michigan, and from Brazil to some point on the Ohio river. There was never the slightest intention of acquiring the Chicago & Eastern Illinois system in Illinois with its proposed extensions.

Moreover, the Coal Railway mortgage contemplated extensions by the issue of further bonds under that mortgage. By the agreement of consolidation of 1894 that mortgage became a closed mortgage, and no further bonds could be issued under it. This plainly was intended to recognize the fact that an end was put to the after-acquired clause in that mortgage.

The charter of the Coal Railway Company, or legislation in Indiana, could have no effect to authorize the Coal Railway Company to extend its line into Illinois. That could only be done under legislation of Illinois. And the consolidated company, in acquiring property in Illinois, is altogether an Illinois corporation, and acts under its Illinois charter, as held in Quincy Railroad Bridge Co. v. County of Adams, 88 Ill. 615–619:

"The Legislatures of this state and of Missouri cannot act jointly. * * * They cannot so fuse themselves into a single sovereignty, and as such create a body politic which shall be a corporation of the two states, without being a corporation of each state or of either state."

The after-acquired property clause of the Chicago & Indiana Coal mortgage contains these words: "All railways which the * * * company may * * * hereafter acquire *. * * by consolidation, * * * *" etc. This clause throughout refers to what "the railway company" may "acquire"; nowhere to what may be acquired by a corporation resulting from a two-state consolidation. A succession of consolidations or mergers might be had with other Indiana corporations which, if on suitable terms, would subject the property of the successive consolidated companies to the lien of this clause. By deed or purchase, if allowed by statute, railways in Ohio, Michigan, or Illinois might be acquired and would be subject to the mortgage. While the clause in question can be no more sweeping than the law permits, it is possible to give effect to every word of it in conceivable cases, and it is not necessary to denounce any part for illegality or ultra vires.

The word "acquired" would in no event be an apt word for a two-state consolidation; neither corporation would acquire anything thereby. They are coupled together, but neither gets a tie, rail, or car that was the other's. The absence of any effort to record the Chicago & Indiana Coal mortgage in Illinois indicates, as I have said, that the parties in 1894 had no idea that the Chicago & Indiana Coal mortgage could ever embrace the Illinois property coming into the consolidation of 1894.

It is unnecessary to decide whether the articles of consolidation could duplicate the effect of the Chicago & Indiana Coal mortgage or vitalize its provisions so as to affect Illinois property, because the language of the articles is not capable of such construction. "Shall have the force and effect of first mortgages executed by the consolidated company" means that the consolidated company adopts these two documents as if executed by itself on the property then therein respectively embraced. It would have been easy to say "one first mortgage," if the scrivener had meant what counsel for the Metropolitan Trust Company contend; but the language is "first mortgages," in the plural. Furthermore, there cannot be two first mortgages on the same property. Therefore, when the articles of 1894 provided that the Indiana Coal mortgage and the general consolidated mortgage should be considered first mortgages of the consolidated company, the parties could only have intended that which was possible, namely, that the Indiana Coal mortgage should be considered a first mortgage on the Indiana Coal properties as they then existed, and the Chicago & Eastern Illinois mortgage should be considered a first mortgage on the Eastern Illinois properties, and upon all property acquired after the consolidation.

The Central Trust Company's mortgage provides:

"If the railroad company shall hereafter consolidate its property and franchises by sale or otherwise with the property and franchises of any other railroad company or companies, the several parties to such consolidation may, by apt words expressed in the agreement, give to this indenture the force and effect of a mortgage, conveying to the trustee above named, or its successor, all of the railroads and appurtenant property thereof of the several parties. * * * *"

It was the intent of this provision to invest the consolidated company with power to issue bonds for the purposes expressed, and subject to the conditions named in this mortgage or deed of trust, to the same extent as they could have been issued by the railroad company if no such consolidation had been made; thereby giving the holders of all bonds issued hereafter, whether by the railroad company or its successors, equality of security.

The fact that the Indiana Coal mortgage contained no provisions for the issue of bonds thereunder by any successor of the Coal Company furnishes a good reason why the Central Trust Company mortgage was continued as an open mortgage, and the Coal Railway Company mortgage expressly closed. The after-acquired property clause of the Indiana Coal Company mortgage was specifically and strictly limited to the property thereafter acquired by the Coal Railway Company. There is no provision whatever in the Coal Company's mortgage for the issue of bonds thereunder by any party other than the original mortgagor, and its provisions as to after-acquired property must be strictly limited to property thereafter acquired by the mortgagor.

The words "equally secure" indicate an intention that the two mortgages shall respectively be held to secure the bonds issued under each; that is to say, that each bond under the Central Trust Company mortgage should be secured equally with each other bond issued under that mortgage, and that each bond executed under the Chicago & Indiana Coal mortgage would be secured equally with every other bond issued under that mortgage. If the intent were to make each mortgage secure the bonds issued under the other mortgage, the informal method adopted could hardly have accomplished it. The consent of bondholders to the imposition of the lien of other bonds upon their mortgage property, suitable action by the trustees, and some semblance of compliance with the statutes regulating conveyances and the recording thereof, would all have been necessary legally to effectuate any such purpose.

The conclusion seems inevitable that originally neither mortgage by virtue of the consolidation agreement alone crossed the state line, and that the consolidated corporation merely assumed, to such extent as it could legitimately and effectively, the two several mortgages, republishing them as first mortgages. It seems to be the ordinary case of a purchaser or property who permits a recital in his deed of conveyance that a mortgage exists upon the property, which he did not make, and that he assumes and agrees to pay it.

The future-acquired property clause in the Coal Railway mortgage, if it were still in force, could not bring property acquired in Illinois under the Illinois charter of the Chicago & Eastern Illinois within the scope or under the lien of the Coal Railway mortgage.

Under the contention of the Metropolitan Trust Company, the security of the Central Trust mortgage bondholders would be less than they contracted for. The security of the outstanding bondholders at the time of the consolidation would be much less than their mortgage

contract promised them. This lien claimed by the Coal Railway mortgage bondholders was an unrecorded lien put where it would not be discovered, and would escape the notice of persons purchasing the bonds of the Chicago & Eastern Illinois after the consolidation. By the terms of the mortgage, the after-acquired property of the Chicago & Eastern Illinois was to be purchased with the proceeds of these bonds to the extent of $18,000 per mile, less the amount of existing prior liens upon the property. The purpose was to give these bonds a first lien on all of the property acquired with their proceeds. Why then should the property acquired with the proceeds of these Chicago & Eastern Illinois bonds after the consolidation also be subject to the Coal Railway mortgage to the amount of the Coal Railway bonds. To give article 7 of the consolidation agreement any such effect would be to convict the parties to the consolidation of gross fraud in order to insure its success. It would require the strongest evidence to justify the court in reaching any such conclusion. Certainly it will not put a strained construction upon article 7 which its language does not justify, in order to reach such a result. The court will never force a balance in order to declare a fraud.

Each of the mortgages contemplated and provided that, in the case of the acquisition of property to come under their liens, the mortgage should be recorded as required by the laws of the state in which the acquired property should be situate. The fact that this was not done or provided for in the consolidation of 1894 shows that no such extension of lien by force merely of article 7 of the consolidation agreement was within the intention of the parties.

The law required the recording of the instrument creating the lien in order to be valid or effective against purchasers or creditors. Failure to record defeats the lien as against the bondholders of the Chicago & Eastern Illinois.

If the parties intended to give the liens contended for by the Metropolitan Trust Company, a new mortgage, or some proper instrument equivalent to a mortgage, and distinctly providing for the lien in clear language, would have been executed and recorded. It would have been easy so to do, and it would have been the natural thing to do.

The provisions of the Constitution of Illinois (article 11, § 13), and the statutes of that state (R. S. c. 114, §§ 19 and 21), respecting the power of railway companies to issue mortgages, were not complied with, but were violated by article 7 of the consolidation agreement of 1894, if it is to be construed as a new mortgage, as contended by counsel for the Metropolitan Trust Company.

Assuming that article 7 intended to create a mortgage lien of the Coal Railway mortgage upon the property of the Chicago & Eastern Illinois, there was no consideration therefor. The Coal Railway mortgagee or bondholders not only did not pay anything for what it is contended they got, but so far as the evidence shows did not know anything about it for many years.

There is this further equitable consideration: It is important in this connection to note that by the terms of the general consolidated mort-

gage, as recognized in the consolidation agreement of 1894, further bonds were to be issued to acquire new properties, but by its very terms no further bonds were to be issued under the Coal Railway mortgage. In fact, not a dollar was ever paid by the Coal Railway bondholders to the Chicago & Eastern Illinois Railway Company for the additional security which they claim to have under the consolidation agreement.

Operating under the terms of the general consolidated mortgage, millions of dollars worth of property were acquired by the consolidated company after 1894 with the proceeds of bonds issued under that mortgage. The use of the bonds for that purpose, coupled with the express declaration in the mortgage extending the after-acquired property clause to property to be acquired by any subsequent consolidated company, made the lien of the bonds so issued virtually a purchase-money mortgage lien on the property acquired after 1894 with the proceeds of those bonds. There is no corresponding equity in favor of the Coal Railway bonds. It would be a great injustice to permit the constituent mortgagor roads, operating under an agreement made between themselves, to use the proceeds of the general consolidated bonds in purchasing property, and without the consent of the bondholders divide the mortgage lien on such after-acquired property ratably between them and the Coal Railway bondholders, who had not advanced one penny for the acquisition of the new property.

Having defined the respective positions of the Chicago & Indiana Coal mortgage and the consolidated mortgage, it seems unnecessary to go further into the question of liens at this time. As my views preclude the enforcement of any lien of the Chicago & Indiana Coal mortgage on property other than the Chicago & Indiana Coal mileage existing in 1894, no claim of the Chicago & Indiana Coal bondholders upon other Chicago & Eastern Illinois railways or property remains to be considered. Any contest between the consolidated mortgage and the refunding mortgage does not interest or concern the Chicago & Indiana Coal bondholders, and such contest, if there be any, is therefore reserved for future consideration.

[3] The validity of the consolidation of the Coal Railway and the Chicago & Eastern Illinois has been challenged upon this hearing on the ground that their roads were parallel and competing. As early as December, 1887, an operating agreement was entered into between the two companies under which the railways were operated under one management; in 1892, a lease was made by the Coal Railway Company of its property for 999 years to the Eastern Illinois Company, in which the lessee undertook and covenanted to pay the interest and principal of the bonds of the Coal Railway Company secured by the mortgage to the Metropolitan Trust Company. These were steps towards the consolidation of the railroad commencing 30 years ago, and were followed by the consolidation agreement of June 6, 1894, and for 30 years these lines have been operated as one system, and for 20 years or more the consolidation agreement of 1894 has stood unchallenged. The Attorneys General of Illinois and Indiana, who were charged with the duty of redressing violations of the constitutional

provisions of those states against the consolidation of parallel and competing railroads, raised no question, so far as the record shows. On the other hand, these officers and the Supreme Courts of these states appear to have recognized the consolidation of these roads. C. & E. I. Railroad v. Doyle, 256 Ill. 514, 100 N. E. 278; State of Indiana v. C. & E. I., 145 Ind. 229, 43 N. E. 226; C. & E. I. v. State, 153 Ind. 134, 51 N. E. 924. Moreover, the complainants in the consolidated cases here appear to have recognized this consolidation upon the record; and the jurisdiction of this court to include the Coal Railway in the receivership and to foreclose its mortgage, I think, assumes, and implies at least, the lawful consolidation of these roads; and this court will continue herein to regard such consolidation as valid and effective. The effect of this will be the recognition of the Coal Railway bondholders as creditors of the defendant Chicago & Eastern Illinois, without any mortgage lien except upon the property of the constituent Coal Railway Company.

Decree may be prepared accordingly.