## MISSISSIPPI VALLEY TRUST CO. v. SOUTHERN TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1919.)

### No. 5250.

1. MORTGAGES ⮞280(4)—LIEN NOT EXTENDED BY ASSUMPTION OF DEBT.

A mere contract of assumption of a mortgage debt does not extend the mortgage lien to other property of the new debtor.

2. RAILROADS ⮞167—CONSTRUCTION OF MORTGAGE ON AFTER-ACQUIRED PROPERTY OF "SUCCESSOR."

"Successor," within a mortgage by a railroad company of all its existing property and all thereafter acquired by it or its successors, means a corporate successor, and not an independent corporation, which takes title to its property by ordinary purchase.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Successor.]

3. RAILROADS ⮞167—MORTGAGE LIEN NOT EXTENDED BY DOCTRINE OF ACCESSION TO CONNECTING LINES.

The doctrine of accession cannot aid to extend the lien of a mortgage given by the O. Company on its railroad and assumed by the M. Company, purchaser of the O. Company's road, to connecting lines, one built by another company and purchased by the M. Company, and the other built by the M. Company; the one being purchased and the other built with funds obtained by the M. Company by mortgaging the two roads to another.

4. RAILROADS ⮞167—MORTGAGE LIEN NOT DISPLACED BY RENEWAL OF RAILS.

That the purchaser of a railroad subject to mortgage relaid part of it with rails bought with proceeds of bonds secured by mortgage to another does not work a displacement of the first mortgage as a first lien on the improved property.

5. RAILROADS ⮞167—MORTGAGE LIEN NOT DISPLACED BY REPAIRS OF EQUIPMENTS.

All engines, cars, and other equipments covered by a railroad mortgage remain subject to the mortgage as a first lien, however renewed by repairs made by the purchaser of the road subject to the mortgage.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

---

⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Controversy in mortgage foreclosure between the Mississippi Valley Trust Company and the Southern Trust Company as to priority of railroad mortgages. Decree for the Southern Company, and the Mississippi Valley Company appeals. Reversed and remanded.

James B. McDonough, of Ft. Smith, Ark., and William S. Gordon, (J. V. Walker, of Fayetteville, Ark., on the brief), for appellant.

D. H. Cantrell and W. E. Hemingway, both of Little Rock, Ark. (Joseph De F. Junkin, of Philadelphia, Pa., and G. B. Rose and J. F. Loughborough, both of Little Rock, Ark., on the brief), for appellee.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

HOOK, Circuit Judge. This is a controversy in a railroad foreclosure suit between the appellant, Mississippi Valley Trust Company, and the Southern Trust Company, appellee, both of them mortgage trustees, over the priority of their mortgages on certain railroad property in Arkansas. The trial court extended the mortgage of the appellee to property acquired and constructed after appellant's mortgage was given. Hence this appeal.

The mortgage of the appellee was executed in 1907 by the Arkansas, Oklahoma & Western Railroad Company, hereafter called the Oklahoma Company, to secure bonds of which $300,000 were issued and outstanding. The mortgage recited the mortgagor's ownership of 22 miles of railroad from Rogers to Springtown in Benton county, Ark.; also a line then being constructed from the latter place southwesterly to Siloam Springs in the same county; also an intention to build a line from Rogers "in a northeasterly direction to a point at or near Eureka Springs, in Carroll county." It purported to cover all existing railroad property and all thereafter acquired by the Oklahoma Company "or its successors," including "continuations, branches and extensions."

In 1911 the Kansas City & Memphis Railway Company, hereafter called the Memphis Company, was organized. It purchased and took a deed of all the property of the Oklahoma Company, and as part of the consideration it assumed the payment of the $300,000 of outstanding bonds of the latter. About the same time it purchased from the Monte Ne Railway Company 8 miles of road from Freeman, a short distance below Rogers, to Monte Ne, on the White river. It also built about 30 miles of road from Cave Springs to Fayetteville. The line to Monte Ne and that to Fayetteville connect with the road bought from the Oklahoma Company. The new Memphis Company executed the mortgage to the appellant upon all of the properties purchased and constructed by it as above mentioned. The money represented by the bonds secured by this mortgage to the appellant was furnished for the specific purpose, in part, of enabling the Memphis Company to acquire and build the Monte Ne and Fayetteville lines, and with the expressed provision that the mortgage should be a first and prior lien upon the entire property of that company, except only

the $300,000 already upon the part thereof bought of the Oklahoma Company.

[1] The principal question in the case is of the effect of the "after-acquired property" clause in the first mortgage; that is to say, whether by virtue of the clause the lien of that mortgage takes precedence over the lien of the subsequent mortgage by the Memphis Company to the appellant upon the Monte Ne and Fayetteville lines of railroad. We are of the opinion that it does not. Preliminarily it should be said that the assumption by the Memphis Company of the $300,-000 of bonds of the Oklahoma Company did not operate to extend the lien of the mortgage securing them to the property afterwards acquired and built by the assuming company. The obligation contracted by the latter was purely personal, and left it free to deal with its other property as it pleased. A mere contract of assumption of a lien debt leaves the lien as it finds it. It does not by itself enlarge or spread the lien to other property of the new debtor. The appellee gained nothing by the contract of sale and assumption, except the addition of a general corporate liability of the Memphis Company for the old mortgage debt.

[2] The after-acquired property clause in appellee's mortgage is somewhat exceptional in the use of the term "successors." Without that term there would be little question, because it could not be said that the Monte Ne and Fayetteville lines were in any real sense subsequent acquisitions of the Oklahoma Company. In considering the meaning of "successors" as used in the mortgage, it must be borne in mind that when the Oklahoma Company sold its property it went out of business; it was no longer a going concern. It was practically dead, except as regards its obligations to its own creditors. The Memphis Company, the purchaser, did not take over its corporate franchise as a successor, but had one of its own from the state in no wise dependent on it. As an independent corporation it bought the property of the Oklahoma Company, and thereafter owned and controlled it in its own right. Doubtless the property remained subject to public duties and conditions inhering in its origin and peculiar character, but that does not make the Memphis Company a successor of the Oklahoma Company, within the meaning of the term employed in appellee's mortgage. The term means a corporate successor, not a vendee, who takes title by ordinary purchase. As bearing upon this subject, see Metropolitan Trust Co. v. Chicago & Eastern Illinois R. Co., 165 C. C. A. 348, 253 Fed. 868, certiorari denied 248 U. S. 586, 39 Sup. Ct. 184, 63 L. Ed. ——. In that case, however, the after-acquired clause was phrased somewhat differently, and there was a consolidation of railroad companies, instead of a purchase by one from the other.

[3] The doctrine of accession is also invoked by the appellee. But the Monte Ne and Fayetteville lines were not added to the railroad belonging to the Oklahoma Company in the usual course of growth or extension. They were not acquired or built by that company, or for it, or with funds for which it obligated itself, or in which it was in any wise interested. They were the result of a new and enlarged

enterprise by another railroad company directly dependent upon different financial engagements an inseparable part of which was the lien to the appellant. Aside from any close consideration, the equities are clearly with those who furnished the moneys for the Monte Ne and Fayetteville roads upon the express condition that they should have on them a first lien.

[4, 5] The Memphis Company relaid about 8 miles of the railroad acquired from the Oklahoma Company with rails bought with proceeds of bonds secured by appellant's mortgage, but that does not work a displacement of appellee's mortgage as a first lien on the property so improved. Finally, all engines, cars, and other equipment which can be identified as having been property of the Oklahoma Company which passed by the sale to the Memphis Company remain subject to appellee's mortgage as a first lien, however renewed by repairs.

The decree of the District Court is reversed, and the cause is remanded for further proceedings in conformity with this opinion.