## COMMERCIAL TRUST CO. v. CHATTANOOGA RY. & LIGHT CO. et al.

## MARYLAND TRUST CO. v. SAME.

(District Court, E. D. Tennessee, S. D.    March 5, 1921.)

Nos. 22, 23.

1. **Creditors' suit** ⊜⇒11(1)—**Mortgagees cannot maintain creditors' bill against successor of mortgagor, in absence of judgment and return of execution.**

Trustees under mortgages executed by a corporation which had subsequently sold its property to another corporation who had no judgment against the purchasing corporation and no return of execution nulla bona, are not entitled to maintain a general creditors' bill against the purchasing corporation.

2. **Street railroads** ⊜⇒54—**Mortgage of after-acquired lines covers lines constructed by successor.**

Where a street railroad company executed a mortgage which by its terms covered lines thereafter to be built or acquired, the mortgage covered lines which were authorized by the charter of the mortgagor but were constructed by the mortgagor's successor.

3. **Street railroads** ⊜⇒54—**Mortgage of lines not authorized by charter unauthorized.**

A street railroad company has no authority to execute a mortgage which covers lines thereafter to be constructed, which it was not authorized to construct at the time it executed the mortgage.

4. **Street railroads** ⊜⇒54—**Mortgage held not to cover successor's line, built under another charter.**

A mortgage expressly including property afterwards constructed or acquired by the mortgagor's successors does not extend to a line subsequently built by a purchasing company under another charter.

5. **Street railroads** ⊜⇒54—**Conveyance subject to mortgage does not enlarge lien to include lines not authorized.**

The fact that a street railroad company which had mortgaged its property and lines thereafter to be constructed or acquired made its property expressly subject to existing mortgage does not enlarge the lien of the mortgage to cover lines subsequently constructed by the purchasing company which were not authorized by the mortgagor's charter but at most imposes a personal obligation on the successor.

6. **Street railroads** ⊜⇒54—**Trustee, unless authorized by mortgage, cannot enforce personal obligation of mortgagor's successor, assuming mortgage.**

Unless the trustee under a mortgage executed by a street railroad company securing its bonds is authorized by the provisions of the mortgage to enforce the personal obligation of a successor of the mortgagor, who assumed the mortgage, the right of action for such enforcement is vested in the bondholders alone.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Electricity ⊚⇒4—Street railroads ⊚⇒54—Charter of street railway mortgagor held not to authorize electric light and power business.**

A street railroad incorporated under Acts Tenn. 1875, c. 142, § 13, to construct and operate a street railroad over a specified route in a designated city, with specified powers to that end, and which obtained an amendment to its charter, after the enactment of Acts· Tenn. 1903, c. 406, permitting street railway companies under the General Corporation Act to construct and operate electric light and power plants, without, by the amendment, seeking authority to construct electric light and power plants, had no authority to construct such a plant, so that a mortgage executed by it covering after-acquired property did not cover the electric light and power equipment of the corporation's successor.

**3. Street railroads ⊚⇒54—Mortgage held not to cover lines constructed by successor.**

A mortgage executed by a street railroad company incorporated by Acts Tenn. 1875, c. 142, § 13, to construct and operate a street railroad over designated routes, does not extend to lines subsequently constructed by a successor of the mortgagor on three streets not included in the routes designated in the charter.

**9. Street railroads ⊚⇒54—Mortgage held not to cover lines acquired by successor.**

Even if the right of a mortgagor's successor to construct street railroad lines along certain streets was acquired by a surrender of the mortgagor's right to construct lines along other streets, and such surrender would have subjected the successor to an action for waste on behalf of the bondholders, it did not operate to extend the lien of the mortgages themselves to the newly acquired lines which the mortgagor had no charter power to own or operate.

**10. Street railroads ⊚⇒54—Mortgage held to cover total tracks and equipment of successor.**

Where a street railroad company which mortgaged its property, including the property thereafter constructed or acquired had power under its charter to lay double tracks on specified routes of its lines, the lien of the mortgage covers the double track laid on such routes by the successor of the mortgagor though they were laid under new franchises obtained by the successor from the city, and the mortgage also covers all new equipment, poles, etc., for use on those lines.

**11. Street railroads ⊚⇒54—Use of new cars on lines not mortgaged does not take them from under lien.**

Where successor of a street railway which had mortgaged its property, including that to be thereafter constructed or acquired, acquired new cars for general use on all its lines, the fact that the cars were sometimes used on lines subsequently constructed by the successor, which were not covered by the mortgage, because not authorized by the mortgagor's charter, does not prevent the lien of the mortgage from attaching to the cars.

**12. Street railroads ⊚⇒54—Subsequent mortgagees have no priority as against equipment purchased by proceeds.**

The fact that new equipment, purchased by the successor of a street car company which had mortgaged its property, including that thereafter acquired or constructed, was purchased from the proceeds of a subsequent mortgage, does not give the bondholders under the subsequent mortgage priority over the prior mortgages as to the equipment so purchased.

**13. Street railroads ⊚⇒54—Successor of mortgagor held entitled to machinery placed in mortgaged power house.**

Where the successor of an electric street railway company had placed in the power· houses covered by a mortgage executed by its predecessor equipment and machinery for furnishing light and power, which the mortgagor was not authorized to furnish, and which was therefore not covered by the mortgage, the successor can remove such machinery and

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

equipment from the mortgaged power houses, before the sale under the mortgages, if they were not so attached to the real property as to become fixtures.

14. **Street railroads** &#9901;**55—Successor of mortgagor is entitled to have receiver reimbursed for .proportion of taxes assessed against mortgaged property.**

Where receivers in a suit to foreclose a mortgage took possession of all the property of the successor of the mortgagor, some of which was not subject to the mortgage and collected the income therefrom, the successor is entitled to have the taxes on a part of the property not covered by the mortgage for the period covered by the receivership paid by the receivers out of their earnings, or out of the proceeds realized from the foreclosure of the mortgages.

In Equity. Separate bills by the Commercial Trust Company, a Pennsylvania corporation, and by the Maryland Trust Company, a Maryland corporation, against the Chattanooga Railway & Light Company and others, to foreclose trust deeds or mortgages executed by the Chattanooga Railways Company, which were consolidated for hearing. Decrees of foreclosure rendered.

Bill in equity by the Commercial Trust Co., a Pennsylvania corporation, against the Chattanooga Railway & Light Co., a Tennessee corporation, et al., to foreclose a trust deed or mortgage executed in 1906 by the Chattanooga Railways Co., a Tennessee corporation, to the plaintiff's predecessor in trust. Subsequent bill, by the Maryland Trust Co., a Maryland corporation, against the Chattanooga Railway & Light Co. et al. to foreclose a prior trust deed or mortgage executed to it by the Chattanooga Railways Co. in 1898. Each bill prayed a mortgage foreclosure and that it be sustained as a general creditors' bill. The two causes were consolidated.

Default in the two mortgages and the general rights of foreclosure thereof were not denied; but a controversy was presented between the two plaintiffs on the one side and the Chattanooga Railway & Light Co. and the Fidelity Trust Co., a Pennsylvania corporation, a defendant under the Maryland Trust Co.'s bill, as to the extent of the property of the Chattanooga Railway & Light Co. covered by the liens of the two mortgages, arising out of the following general situation: In 1909, after the Chattanooga Railways Co., a street railway corporation, had executed these two mortgages, each of which contained an after-acquired clause, the Chattanooga Railway & Light Co. was organized as a Tennessee corporation, authorized to operate both a street railway and a light and power plant. After its organization it acquired, by deeds, all the property of the Chattanooga Railways Co., subject to the two mortgages in suit, and also all the property of the Chattanooga Electric Co., a Tennessee light and power company. Thereafter all these street railway and light and power properties were operated by the Chattanooga Railway & Light Co., which in turn executed a third trust deed, or blanket mortgage, on all its properties, to the Fidelity Trust Co., and thereafter added extensively to its properties.

On preliminary applications receivers were appointed by the court, under the two bills, of all the street railway properties of the Chattanooga Railway & Light Co., but not of its light and power properties.

Hearing on various interlocutory motions and on pleadings and proof as to decree of foreclosure. Bills not sustained as general creditors' bills; but foreclosure decree awarded and scope determined.

Charles T. Cates, of Knoxville, Tenn., and John Hampton Barnes, of Philadelphia, Pa., for Commercial Trust Co.

J. M. Trimble, of Chattanooga, Tenn., for Maryland Trust Co.

&#9901;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Brown, Spurlock & Brown, of Chattanooga, Tenn., and Joseph S. Clark and Percy H. Clark, both of Philadelphia, Pa., for Chattanooga Ry. & Light Co.

Finlay & Campbell, of Chattanooga, Tenn., and Morgan, Lewis & Bockius and Francis B. Bracken, all of Philadelphia, Pa., for Fidelity Trust Co.

SANFORD, District Judge. I have carefully considered the evidence, and the arguments and briefs of counsel, dealing with many questions and citing many authorities.

My conclusions on what, after such consideration, appear to me to be the crucial and determinative questions, briefly stated, without elaboration or detailed citation or discussion of the authorities, are:

[1] 1. Neither the Commercial Trust Co. nor the Maryland Trust Co. are, as trustees under their respective mortgages, themselves creditors of the Chattanooga Railway & Light Co. (hereinafter called the Railway & Light Co.); neither has any judgment against it or return of nulla bona; and neither, under the allegations of its bill, is entitled to maintain the same as a general creditors' bill against the Railway & Light Co. See Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, and Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 37 L. Ed. 804.

2. The Railway & Light Co. is neither the corporate successor of the Chattanooga Railways Co. (hereinafter called the Railways Co.), nor a consolidated company of which the Railways Co. is a constituent member; but it is the purchaser of all the street railroad properties which were conveyed to it by the Railways Co. in August, 1909, and successor in title thereto.

3. It is admitted that the mortgage of 1898 made by the Railways Co.—under its former name of the Chattanooga Electric Railroad Co.—to the Maryland Trust Co. (hereinafter called the Maryland mortgage), and the mortgage of 1906 made by the Railways Co. to the Trust Co. of America, the predecessor in trust of the Commercial Trust Co. (hereinafter called the Commercial mortgage), constitute a first and second lien, respectively, upon all the street railroad properties which were conveyed to the Railway & Light Co. in August, 1909, as aforesaid; and that such liens cover all the street railroad lines and properties which came into the possession of the receivers herein and are now being operated by them, except the following lines and properties built or acquired by the Railway & Light Co., namely, (a) the West Sixth Ave., Rossville and Vance Ave. lines, (b) new cars, (c) double tracks, (d) air hoist equipment and (e) certain poles. It is also denied that either of these two mortgages extends to the electric light and power properties conveyed to the Railway & Light Co. in August, 1909, by the Chattanooga Electric Co. or to certain electric light and power equipment placed by the Railway & Light Co. in the Seventh St. and Ridgedale power stations.

[2] 4. When a railroad company, authorized by its charter to build and operate a certain line of railroad, mortgages such railroad with its appurtenances as an entire system, as then built or thereafter to be

built or acquired, the lien of such mortgage thereafter extends to all additions and accessions coming within its terms, made and added thereto either by the mortgagor or by a successor in title, even although such successor be not mentioned in the after-acquired clause; every one thereafter acquiring such line of railroad, or any interest therein, from the mortgagor, taking the same cum onere, and being estopped by privity of title with the mortgagor, to deny that such additions and accessions are embraced within the mortgage. Wade v. Chicago Railroad, 149 U. S. 327, 341, 342, 13 Sup. Ct. 892, 37 L. Ed. 755; Compton v. Jesup (6th Circ.) 68 Fed. 286, 287, 15 C. C. A. 397, cited with approval in Railway Springs Co. v. Chicago Railroad (D. C.) 246 Fed. 338, 347, and Metropolitan Trust Co. v. Chicago Railroad (7th Circ.) 253 Fed. 863, 871.

[3, 4] 5. On the other hand a railroad company is without authority to mortgage as after-acquired property a line of railroad or other property which it is not authorized within the limitations of its then charter to build or acquire; such attempted mortgage being ultra vires. See Alexandria Railway Trustees v. Graham, 31 Grat. (Va.) 769, 777; and by implication, Galveston Co. v. Cowdrey, 11 Wall. 459, 481, 20 L. Ed. 199; Pennock v. Coe, 23 How. 117, 132, 16 L. Ed. 436; Compton v. Jesup (6th Circ.) 68 Fed. 263, 37 L. Ed. 755, supra. Thus the after-acquired clause of a railroad mortgage will not extend to a line of railroad not within the charter limits of the mortgagor, subsequently acquired by a consolidated company of which it becomes a constituent, under the charter of another railroad company. Railway Springs Co. v. Chicago Railroad (D. C.) 246 Fed. 338, supra, at page 347 (affirmed sub nom. Metropolitan Trust Co. v. Chicago Railroad, 253 Fed. 863, supra). Nor will a railroad mortgage, though expressly including property afterwards acquired by the mortgagor's "successors," extend to a connecting line of railroad subsequently built by a purchasing company under another charter. Mississippi Valley Trust Co. v. Southern Trust Co. (8th Circ.) 261 Fed. 765.

[5, 6] 6. The liens of the Maryland mortgage of 1898 and the Commercial mortgage of 1906 are not in any wise enlarged by the fact that the street railroad properties were conveyed to the Railway & Light Co., subject to these two mortgages. Even if these mortgages were thereby, or otherwise, assumed by the Railway & Light Co., this creates merely a personal obligation of the Railway & Light Co. and does not enlarge the mortgage liens. Mississippi Valley Trust Co. v. Southern Trust Co. (8th Circ.) 261 Fed. 765, supra, at page 767. And it is not necessary to determine whether such personal obligation was thereby created, since in any event, neither mortgage creates the mortgagee a trustee to enforce such personal obligation, arising subsequently to and independently of the mortgages themselves, and if such obligation has been created, the right of action for its enforcement is vested in the bondholders alone.

[7] 7. It is clear that neither the Maryland mortgage of 1898 nor the Commercial mortgage of 1906 extends to the electric light and power property conveyed by the Chattanooga Electric Co. to the Railway & Light Co. in August, 1909. The Railways Co. was chartered under

the general incorporation Act of 1875 for the sole "purpose" of constructing and operating a street railroad in Chattanooga over specified routes, and with specified powers to that end. Tenn. Acts of 1875, c. 142, § 13, p. 250. It was no part of its purpose to operate an electric light and power plant; and it had no charter power so to do, either in 1898 or in 1906. It is true that the Tennessee Acts of 1903, c. 406, p. 1150, amended the general incorporation Act of 1875, so as to invest street railway companies with power to construct and operate electric light and power plants. However, this did not operate of itself to extend the charter power of the Railways Co.; and if it desired to obtain this additional power it was necessary for it to apply for and obtain an amendment to its charter, investing it with such power, in accordance with the provisions of the Tennessee Acts of 1897, c. 116, p. 271. This, however, it did not do, although it did, after the Act of 1903, and before the Commercial mortgage of 1906, obtain an amendment to its charter for other purposes. It therefore at the time of this mortgage, had no charter power to construct or operate an electric light and power plant; and had no intention of acquiring such power or entering upon such business. Furthermore, construing the broad language of the after-acquired clauses in both mortgages in the light not only of the limit upon the corporate power and purpose of the mortgagor, but of the specific properties enumerated, it is clear that they were intended to relate only to after-acquired street railroad properties and that electric light and power properties were not within their contemplated scope. See Compton v. Jesup (6th Circ.) 68 Fed. 286, supra, at page 287; Railway Springs Co. v. Chicago Railroad (D. C.) 246 Fed. 347; and Alexandria Railway Trustees v. Graham, 31 Grat. (Va.) 769, supra, at page 563.

8. Construing and applying these two mortgages however, in the light of Wade v. Chicago Railroad, 149 U. S. 327, 13 Sup. Ct. 892, 37 L. Ed. 755, supra, and Compton v. Jesup (6th Circ.) 68 Fed. 286, supra, in which mortgages containing similar after-acquired clauses, without reference to successors in title, were involved, I conclude that both the Maryland mortgage of 1898 and the Commercial mortgage of 1906, were intended to cover the entire system of street railroads which the Railways Co. was authorized under its charter to build and operate, with all appurtenances thereto as the same was then built or might thereafter be built or acquired; and that the lien of each mortgage now extends to all additions and accessions coming withing such charter powers, which have been made and added thereto by the Railway & Light Co. as successor in title to the Railways Co.; but that, on the other hand, the lien of neither mortgage extends, or was intended to extend, to additions and accessions that have been made by the Railway & Light Co. that were beyond the charter power and purpose of the Railways Co.

[8, 9] 9. The Railways Co. had no authority under its charter to construct or operate either the West Sixth Ave. line, Vance Ave. line or Rossville new line, and the construction of such lines were no part of its corporate purpose. The general incorporation act of 1875 requires that the charter of a street railroad company shall specify the ini-

tial terminus, ending, and general route of the line which it is the "purpose" of the company to construct. Tenn. Acts of 1875, supra, at page 250. Under this Act a street railroad company has no charter power to construct a line over a route not thus set forth. Citizens' Railway v. Africa, 100 Tenn. 26, 43, 42 S. W. 485, 878. And see Mayor v. Africa (6th Circ.) 77 Fed. 501, 507. None of the routes set forth in the Railways Co. charter covered either the West Sixth Ave., Vance Ave. or new Rossville lines. Nor did the Street Railways Co. apply for and obtain an amendment to its charter covering any of these lines, as it could have done under the Act of 1897, supra. See Tennessee Railroad v. Campbell, 109 Tenn. 655, 663, 73 S. W. 112, and Collier v. Railroad, 113 Tenn. 96, 117, 83 S. W. 155. As the Railways Co. therefore had no charter power or purpose to build or construct either of these lines, neither the Maryland mortgage nor the Commercial mortgage can be held, under their after-acquired clauses, to cover either of these lines, which were subsequently built by the Railway & Light Co. under the new powers granted to it under its own charter. It is not clear that the franchise for rights of way granted the Railway & Light Co. by either the City or County (which were likewise essential before such lines could be built) were given in part in consideration of the surrender by the Railway & Light Co. of any previous franchises owned by the Railways Co. pursuant to its charter power; but even if that were so, while the surrender thereof would have apparently subjected the Railway & Light Co. to an action for waste in behalf of the mortgage bondholders, this cannot, in my opinion, operate to extend the lien of the mortgages themselves to the newly acquired property which the Railways Co. had no charter power to either own or mortgage.

[10] 10. The liens of the Maryland and Commercial mortgages do, however, extend to the double tracks laid by the Railway & Light Co. on the charter routes of the Railways Co. and on which the Railways Co. had previously had single tracks. The construction of double tracks on such routes was within the charter powers of the Railways Co., and the fact that the double tracks were laid under new franchises obtained from the City by the Railway & Light Co. does not prevent the lien of the mortgages from attaching thereto. Compton v. Jesup (6th Circ.) 68 Fed. 286, supra, at page 287; Harris v. Bridge Co. (6th Circ.) 90 Fed. 323, 333. And see as to relaid rails: Mississippi Valley Trust Co. v. Southern Trust Co. (8th Circ.) 261 Fed. 765, supra, at page 768.

11. The liens of the Maryland mortgage and Commercial mortgage likewise attach to the air hoist equipment installed in the railway car shops of the Railway & Light Co.; being an addition or accession to the mortgaged property coming within the scope of the after-acquired clauses of the two mortgages.

[11] 12. The liens of said two mortgages also extend to the new cars added to the railway equipment by the Railway & Light Co. They are after-acquired property aptly described in both mortgages, used in connection with the street railway system which the Railways Co. had authority under its charter to operate and mortgage. See Buck v.

Railroad, 3 Shann. Tenn. Cas. 774, 779. The fact that these new cars, used primarily as appurtenances to the entire street railway system covered by the mortgages, may have been also incidentally used on the three lines above mentioned which were not included in the mortgages, does not, I think, affect the lien which would otherwise exist. In this aspect the instant case is essentially different from Metropolitan Trust Co. v. Chicago Railroad (7th Circ.) 253 Fed. 863, supra, in which it inferentially appears that the new equipment was used in large, if not the greater, part, on lines of railroad not covered by the mortgage, and that no part thereof had ever been set apart for use on the mortgaged line and as a part thereof.

13. For like reasons I am of opinion that the lien of said two mortgages also extends to the poles built by the Railway & Light Co. along the several lines covered by the mortgage and used for the support of the street railway trolley system along said lines; but not to poles erected by the Railway & Light Co. along the West Sixth Ave., New Rossville and Vance Ave. lines.

[12] 14. The fact that the car hoist equipment and new cars may have been purchased, double track laid and poles erected by the Railway & Light Co. with the proceeds of bonds issued under the Railway & Light mortgage of 1909 to the Fidelity Trust Co., does not create a countervailing equity which will prevent the lien of the Maryland and Commercial mortgages from attaching thereto. Mississippi Valley Trust Co. v. Southern Trust Co. (8th Circ.) 261 Fed. 765, supra, at page 768. And see Galveston Co. v. Cowdrey, 11 Wall. 459, supra, at page 480. This is not a case of subsequently acquiring property subject to liens or equities which arise in the act of purchase or acquisition, as in Harris v. Bridge Co. (6th Circ.) 90 Fed. 323, supra, at page 328, and United States v. New Orleans Railroad, 12 Wall. 362, 365, 20 L. Ed. 434.

[13] 15. The electric light and power equipment and machinery placed by the Railway & Light Co. in the Seventh St. and Ridgedale railway power stations were not, however, added as parts of the railway system covered by the two mortgages or appurtenant thereto, and are not covered by the lien of either of the two mortgages. Nor were they added to the railway property in such sense as to become fixtures or to pass under the mortgages as accretions to the mortgaged property. It appears that they can be removed without injury to the mortgaged property, and the Railway & Light Co. should be allowed a reasonable time for such removal, which will be fixed at sixty days. The fact that the Railway & Light Co. sold certain old railway machinery and equipment which was covered by the mortgages would not affect this question, but merely give rise to a right of action in behalf of the bondholders against the Railway & Light Co. for the value of the mortgaged property thus disposed of by it.

16. As the lien of the Maryland and Commercial mortgage does not extend to the electric light and power property acquired and owned by the Railway & Light Co., the motion of the plaintiffs for an extension of the receivership herein to such property must be denied; and the motion of the Railway & Light Co. for a dissolution of the injunction

granted by consent pending the hearing of the motion for extension of the receivership, must be hence granted.

[14] 17. Since the court, on the application of the plaintiffs and for their benefit, took possession, through the receivers herein, of the railway lines and property of the Railway & Light Co. and has appropriated the income therefrom, it is a matter of clear equity that, whatever might otherwise be the duty of the Railway & Light Co. as to the payment of taxes thereon as a personal obligation, the tax on such property for the period covered by the receivership should be paid by the receivers out of their earnings, or if such earnings are insufficient, such tax should be paid as part of the operating expenses of the receivers out of the proceeds realized from the foreclosure of the two mortgages. If the parties do not, within two weeks, agree as to the proportionate amount of taxes attributable to such railway properties, a reference will be made to a master to ascertain and report as to the amount thereof.

18. It results that the plaintiffs are entitled to decrees of foreclosure of their respective mortgages in satisfaction of the bonded indebtedness thereby secured and admittedly due; the sales to include all property covered by such mortgage liens as hereinabove set forth.

19. The question as to whether, in the event such foreclosures and sales do not realize sufficient amounts to discharge the bonds secured by such respective mortgages, the plaintiffs would be then entitled to deficiency decrees for the benefit of the bondholders, is reserved until after the sales and the determination of the question as to whether any such deficiency exists.

20. A decree will be entered in accordance with this opinion.