## SUSQUEHANNA TRUST & SAFE DEPOSIT CO. v. UNITED TELEPHONE & TELEGRAPH CO. et al.

(Circuit Court of Appeals, Third Circuit. June 15, 1925.)

No. 3309.

1. Corporations ⬳477(1), 590(5)—Mortgage of after-acquired property valid; what property covered by mortgage given by corporation before consolidation determined.

A mortgage by a public service corporation of after-acquired property is valid, but on consolidation of the mortgagor with another corporation does not extend to property contributed by the latter, nor to other property of a new debtor, which has merely assumed the debt of the mortgage containing the after-acquired property clause.

2. Corporations ⬳478—Scope of after-acquired property clause in mortgage stated.

A mortgage of its property by a corporation, containing an after-acquired property clause, extends only to property then owned and subsequently acquired by the mortgagor or by another in virtue of the mortgagor's rights.

3. Estoppel ⬳26—Who are estopped by after-acquired property clause in mortgage stated.

The estoppel raised by an after-acquired property clause in a mortgage to assert that the mortgage does not cover all the property and rights which it purports to cover operates against the mortgagor corporation and persons claiming under and in privity with it, but does not operate against others not so related, who desire to contest the lien on the ground that the property in question was acquired by another in its own right.

4. Appeal and error ⬳1022(3) — Findings of master on conflicting evidence, approved by court, reversible only for plain error.

An appellate court will be slow to reverse findings of fact by a master, approved by the judge, on controverted evidence.

5. Evidence ⬳230(3)—Admissions by mortgagor as to after-acquired property may be admissible in evidence.

Admissions made by a mortgagor corporation after execution of the mortgage, against the interest of the mortgagee, are not binding on the mortgagee, but may be admissible in evidence in a controversy between it and another on the question of fact whether certain property was after-acquired property of the mortgagor.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit in equity by the Susquehanna Trust & Safe Deposit Company against the United Telephone & Telegraph Company and others. From the decree, complainant appeals. Affirmed.

Charles M. Clement, of Sunbury, Pa., and John G. Reading and Henry C. Hicks, both of Williamsport, Pa., for appellant.

J. Fred Schaffer, of Sunbury, Pa., and Charles L. Miller and John E. Malone, both of Lancaster, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. This case had its rise in the early days of the telephone, when numberless local corporations, not realizing the operative and commercial scope of the invention, built short lines and established small systems in limited areas. They did this largely on borrowed money. The outcome of these adventures, as their history shows, was feeble success or complete failure, resulting ultimately in receiverships or absorption by larger concerns. After purchase or merger, properties thus acquired, being already pledged for money borrowed, were usually pledged again by the absorbing corporations, and still again by larger absorbing corporations, until on the original properties rested many liens of different sizes and priorities. The instruments creating such liens—whether mortgages or deeds of trust—frequently contained clauses covering after-acquired property and on foreclosure there often arose the question as to which of many instruments was paramount in respect to property thus acquired and, accordingly, which of many liens thereon was first. That was the situation and that is the question in this case.

Three telephone companies, all incorporated under the laws of Pennsylvania, are here involved. They are: North & West Branch Telephone Company, Central Commercial Telephone Company, and United Telephone & Telegraph Company. In this group, the United (as its name denotes) is the absorbing company; the other two are the companies absorbed.

The North & West Branch was chartered in 1896 for the transaction of the telephone business in certain counties of Pennsylvania. Among them was Lycoming county, which embraces the borough of Jersey Shore, the area here in controversy. In 1900, this company executed a first mortgage on all its property, then owned and thereafter to be acquired, and delivered it to the Susquehanna Trust & Safe Deposit Company (the complainant in this suit) as trustee to secure $100,000 of its bonds. These bonds were issued and sold and with the money

received the North & West Branch built lines in Lycoming county and (the complainant maintains) had by July, 1901, built a part of a line in the borough of Jersey Shore and had installed at least one telephone.

The Commercial Company also was chartered to construct and operate a telephone system in certain counties of Pennsylvania including Lycoming county, and under authority of an ordinance, granted to it and its successors by the borough of Jersey Shore, it constructed at least one short line in that territory. On July 1, 1901, the Commercial sold all its property to the United. Immediately thereafter the latter company proceeded to enlarge and extend the system in the borough of Jersey Shore and by the spring of 1902 had completed it. In the meantime the United had executed and delivered to the Equitable Trust Company, one of the respondents, its mortgage for $2,000,000 covering all its property. In August, 1902, following negotiations and in compliance with the provisions of an Act of the Assembly of Pennsylvania expressly passed for the purpose, the North & West Branch disposed of all of its corporate rights, franchises and privileges and conveyed all its property, subject to all of its debts and liabilities, to the United Company, and then ceased to exist. Having absorbed the rights and properties of these two companies, the United continued the operation of the lines which another had started and it had completed in the borough of Jersey Shore.

Some years later the United went into the hands of receivers. Defaults in interest payments on its assumed obligations occurring, the Susquehanna Trust & Safe Deposit Company, the mortgagee of the North & West Branch, by permission of the court, instituted a proceeding to foreclose its mortgage. Immediately there arose a question as to whether the mortgage of the North & West Branch, held by the Susquehanna Trust & Safe Deposit Company, covered the telephone line in the borough of Jersey Shore as after-acquired property within the terms of the mortgage. The answer to that question depended upon whether the extension of the line by the United, after it had acquired the property of the Commercial, was an extension of the Commercial's property or was an extension of the property of the North & West Branch and was, therefore, after-acquired property of that company within the clause of its mortgage, binding upon the United when it acquired the property of the North & West Branch subject to its liens. This question, having grown into an active dispute, was presented to the District Court of the United States for the Middle District of Pennsylvania by bill of complaint filed in this case by the Susquehanna Trust & Safe Deposit Company against the United Telephone & Telegraph Company, William B. McCaleb, its receiver, and the Equitable Trust Company, its mortgagee, in which the complainant asserted that at the time of the sale of the property to the United the North & West Branch had constructed and owned a very small partially constructed line in the borough of Jersey Shore, alleged that the extensions by the United were extensions of that line and therefore were after-acquired property covered by its mortgage and prayed that the court declare the mortgage of the United to the Equitable Trust Company secondary and subordinate to the mortgage of the North & West Branch, and that the purchaser at a sale on foreclosure of the latter mortgage will take title to the property therein described, including that in the borough of Jersey Shore, free and discharged from the lien of the mortgage of the United to the Equitable Trust Company.

The court referred the matter to a master who resolved all questions of fact against the complainant and, on applying the law to the facts he had found, recommended a decree denying priority to the lien of the mortgage of the North & West Branch on property in the borough of Jersey Shore and prescribing a plan of sale and method of distributing the proceeds in the foreclosure proceedings. After a hearing on exceptions, the court adopted the report of the master and embodied his recommendations in the decree now appealed from.

Notwithstanding the many assignments of error, all the points for argument and all questions involved in this appeal narrow down to two propositions:

First, did the trial court err, as a matter of law, in affirming the master's conclusions of law that the North & West Branch mortgage to the complainant, under its after-acquired property clause, does not cover the telephone property afterwards constructed in the borough of Jersey Shore by the United Company?

Second, did the trial court err in sustaining the master's findings of fact that the Jersey Shore property was not built by the United as an accession or addition to the North & West Branch telephone property?

[1] The answer to the first question real-

ly depends upon the answer to the second, for, as stated by Mr. Justice Field as long ago as the decision in Thompson v. White Water Valley R. Co., 132 U. S. 68, 73, 10 S. Ct. 29, 33 L. Ed. 256, the validity of mortgages given by public utility companies upon property not in, existence at the time but subsequently acquired is not an open question, citing Galveston Railroad Co. v. Cowdrey, 78 U. S. (11 Wall.) 459, 20 L. Ed. 199. In that case there were several deeds of trust which in terms covered after-acquired property. The court held (481) that they estopped the company (the grantor there or the mortgagor here) and all persons claiming under them, and in privity with them, from asserting that they did not cover all the property and rights which they professed to cover. The court said:

"Had there been but one deed of trust, and had that been given before a shovel had been put into the ground towards constructing the railroad, yet if it assumed to convey and mortgage the railroad, which the company was authorized by law to build, together with its superstructure, appurtenances, fixtures, and rolling stock, these several items of property, as they came into existence, would become instantly attached to and covered by the deed, and would have fed the estoppel created thereby. No other rational or equitable rule can be adopted for such cases."

See, also, Porter v. Pittsburgh Steel Co., 122 U. S. 267, 283, 7 S. Ct. 1206, 30 L. Ed. 1210, Branch v. Jesup, 106 U. S. 468, 1 S. Ct. 495, 27 L. Ed. 279, and Commercial Trust Co. v. Chattanooga Ry. & L. Co. (D. C.) 281 F. 856, 859, and cases therein cited.

[2, 3] While this indubitably is the law of mortgages and deeds of trust covering after-acquired property, yet it does not go to the extent of holding that, under the usual after-acquired property provision, the lien of such a mortgage or deed of trust, on consolidation of a mortgagor corporation with another, spreads to the property contributed by the other constituent. Met. Tr. Co. v. Chicago, etc., R. Co., 253 F. 868, 871, 165 C. C. A. 348; certiorari denied 248 U. S. 586;[1] nor does it extend to other property of a new debtor who, as here, has merely assumed the debt of the mortgage containing the after-acquired property clause. Miss. Valley Tr. Co. v. Sou. Tr. Co. (C. C. A.) 261 F. 765, 767. A mortgage containing such a clause extends only to the property, presently and prospectively held, which it professes to cover (Thompson v. White

[1] 39 S. Ct. 184, 63 L. Ed. 434.

Water Valley R. Co., supra), and only to property then owned and subsequently acquired by the mortgagor or by another in virtue of the mortgagor's rights (New York, etc., Co. v. Louisville R. Co. [C. C.] 102 F. 382). And so, the estoppel (which such an instrument raises) from asserting that the mortgage does not cover all the property and rights which it professes to cover operates against the mortgagor company and against all persons claiming under and in privity with it, but it does not operate against others not so related who desire to contest the lien of such an instrument as to whether the property in question has been afterward acquired by the mortgagor or under the rights of the mortgagor, or by another under its own rights. Trust Company of America v. City of Rhinelander (C. C.) 182 F. 64, 69. This particularly is the situation of the Equitable Trust Company, mortgagee of the United Company under a mortgage which antedates the purchase by the United of the property of the North & West Branch, and which therefore antedates any relation between those two companies. When one in this position raises such a question, the contest becomes purely one of fact.

Thus we come to the second question: Did the trial court err in sustaining the master's finding of fact that the Jersey Shore property was not built by the United as an accession or addition to the North & West Branch telephone property? On this question the substance of the master's findings is that neither the North & West Branch, nor the United as successor of the North & West Branch, ever had any municipal authority to build telephone lines in the borough of Jersey Shore; that the Commercial, and its successors, had such municipal authority; that the Commercial started the line in question and the United, as the successor of the Commercial, completed it; that, accompanying the deed from the North & West Branch to the United, conveying all its property to the latter, there was attached a map, expressly made a part of the deed, which showed that the line of the North & West Branch did not extend west of Larry's creek in Lycoming county and did not enter the borough of Jersey Shore; that the North & West Branch had no lines in the borough of Jersey Shore at the time it executed the mortgage to the complainant or at the time it sold its property to the United; that after its purchase of the Commercial property the United began the extension and enlargement of the Commercial's

line in Jersey Shore and completed it prior to the time the United bought the property of the North & West Branch; that the extension made by the United was an extension of or an accession to the line of the Commercial and not of the line or under the rights of the North & West Branch; and that, in consequence, the property which the United thus acquired was acquired in its own right and not under rights of the North & West Branch to which it had succeeded by purchase. Mississippi Valley Trust Co. v. Southern Trust Co. (C. C. A.) 261 F. 765, 767.

[4] The master made these findings on conflicting evidence and the learned trial court approved them by its decree. Under the familiar rule, this appellate court will be slow to reverse findings of fact made by a master and approved by the judge on controverted evidence. In order, however, to determine whether in making these findings these two judicial officers made a clear mistake of fact or inadvertently disregarded or clearly misapprehended the evidence, we have read the record. Speaking negatively, we have failed to find error; speaking affirmatively, we have made the same findings. In announcing our judgment we do not regard it necessary to review and appraise the testimony in this opinion. We shall advert only to one matter on which the appellant, in urging error, has laid particular stress, which is the admission in evidence of the map accompanying the deed by which the North & West Branch conveyed its property to the United and which did not show any lines of the North & West Branch extending into the borough of Jersey Shore, thereby indicating that lines of the North & West Branch in the borough of Jersey Shore did not exist.

[5] The defendants argue that the map showing no line of the North & West Branch in that borough operates as an estoppel against the Susquehanna Trust & Safe Deposit Company, the mortgagee, in enforcing the mortgage of the North & West Branch against property in the borough of Jersey Shore. With this contention the master and the court seemed impressed. The Trust Company, however, holds that the mortgage antedated the act of the North & West Branch in embodying such a map in its deed of conveyance to the United and therefore it, the mortgagee, is not bound by what it regards as res inter alios acta.

We are of opinion that in a measure the Trust Company is right; that is, the Trust Company mortgagee is not bound and therefore is not estopped by this admission of the mortgagor against its interest, made subsequent to the execution of the mortgage. Yet this admission of the mortgagor against interest was evidence. While not estopping or binding the mortgagee, it was admissible like other evidence to prove the issue of fact then under consideration as to whether the North & West Branch had any property in the borough of Jersey Shore at the time of the conveyance; that is, at the time when privity between the two companies first arose, which was after the United had completed the extension of the Commercial's line, and, accordingly, to prove whether this property was or was not property of the mortgagor falling under the after-acquired property clause of its mortgage. We do not regard the map either with the confidence of the respondents or with the concern of the complainant as evidence weighing heavily in determining this issue of fact, for without the map we think the evidence amply sustains the master's findings.

Applying the law to the facts, the decree is affirmed.